■ In the Matter of the Surrender of TERRY DD. ST. LAW-RENCE COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; ALONZO EE., Appellant. — Appeal from an order of the Surrogate's Court of St. Lawrence County (Livingston, S.), entered January 24, 1984, which approved an instrument transferring custody of the child to the St. Lawrence County Department of Social Services.

At issue on this appeal is whether the Surrogate erred in determining that appellant's consent to the surrender of the infant to the St. Lawrence County Department of Social Services, pursuant to a written instrument signed by the infant's mother, was not required. We conclude that although the grounds relied upon by the Surrogate were improper, the determination was nevertheless correct.

Subdivision 1 of section 384 of the Social Services Law prescribes the method whereby a child may be freed for adoption by means of a written surrender. The relevant provision where, as

here, the child is born out of wedlock states that the surrender must be signed by the mother and by the father if his consent would be required for the child's adoption pursuant to section 111 of the Domestic Relations Law (Social Services Law, § 384, subd 1, par [c]). Prior to 1980, only the consent of the mother to the adoption of a child born out of wedlock was required by section 111 of the Domestic Relations Law, but the United States Supreme Court held that this gender-based distinction violated the equal protection clause of the Fourteenth Amendment (*Caban v Mohammed,* 441 US 380). Accordingly, the Legislature amended section 111 to require the consent of the father of a child born out of wedlock under certain circumstances. Where, as here, the child is placed with the adoptive parents more than six months after birth, the father's consent is required only if he: "shall have maintained substantial and continuous or repeated contact with the child as manifested by: (i) the payment by the father toward the support of the child of a fair and reasonable sum, according to the father's means, and either (ii) the father's visiting the child at least monthly when physically and financially able to do so * * * or (iii) the father's regular communication with the child or with the person or agency having the care or custody of the child, when physically and financially unable to visit the child" (Domestic Relations Law, § 111, subd 1, par [d]). The statute further provides that: "The subjective intent of the father, whether expressed or otherwise, unsupported by evidence of acts specified in this paragraph manifesting such intent, shall not preclude a determination that the father failed to maintain substantial and continuous or repeated contact with the child. In making such a determination, the court shall not require a showing of diligent efforts by any person or agency to encourage the father to perform the acts specified in this paragraph" (Domestic Relations Law, § 111, subd 1, par [d]). Where the unmarried father does not meet these criteria, the adoption may go forward merely upon the consent of the mother (*Matter of Female D.,* 83 AD2d 933, 935, app dsmd 55 NY2d 878).

The record is devoid of any proof tending to establish that appellant met any of the criteria set forth in the statute. Nor does the record even contain a denial of the allegations in the verified petition that appellant did not meet the statutory criteria. Indeed, the record reveals that the only affirmative steps taken by appellant with respect to the child were to appear when this proceeding was initiated and request assistance of counsel. "The statute requires the consent of *both* parents where a *de facto* family unit has been created through the efforts of the natural father but, at the same time, precludes an absentee

biological father from frustrating the attempts at adoption undertaken by the natural mother in the perceived best interests of the child where she is the only parent available to it" (*Matter of Female D., supra,* p 935).

It is also noteworthy that the record contains no proof that appellant is in fact the father of the child. His name does not appear on the child's birth certificate or in the registry of putative fathers. There is no written acknowledgment of paternity by appellant and his counsel submitted no proof of paternity at the hearing.

Turning next to the grounds relied upon by the Surrogate for concluding that appellant's consent was not required, it appears that appellant was arrested shortly after this proceeding was commenced and that he has been convicted of felony charges in New Jersey, where he is currently serving a term of imprisonment of 20 years with a minimum of five years before he is eligible for parole. The Surrogate concluded that the conviction served to deprive appellant of his civil rights (see Civil Rights Law, § 79, subd 1) and, therefore, his consent was not required pursuant to section 111 (subd 2, par [d]) of the Domestic Relations Law. The latter provision, however, was deleted prior to the date of the Surrogate's decision (L 1983, ch 911, § 4, eff Jan. 1, 1984). Moreover, the petition did not allege appellant's loss of civil rights as a basis for dispensing with his consent and it was never amended to include such an allegation. However, since there is no proof that appellant met the criteria set forth in section 111 (subd 1, par [d]) of the Domestic Relations Law, his consent was not required and the order approving surrender of the child should be affirmed.

Order affirmed, without costs. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.